Daron E. DRISCOLL, Plaintiff,

v.

David TOWNSEND and Daniel
Bucci, Defendants.

No. 97–CV–120H.

United States District Court,
W.D. New York.

June 18, 1999.

Daron E. Driscoll, Gr., Auburn, NY, Pro se.

Ransom P. Reynolds, Donald S. Thomson, Davidson & O'Mara, Elmira, NY, Peter B. Sullivan, NYS Attorney General's Office, Buffalo, NY, Defendants.

### DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct all further proceedings in this case, including trial and entry of judgment, in accordance with 28 U.S.C. § 636(c). Defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In response to defendants' motion, plaintiff filed a cross-motion for summary judgment. For the reasons that follow, defendants' motion is granted, and plaintiff's motion is denied.

### *BACKGROUND*

The following facts are undisputed. On the morning of March 9, 1995, City of Elmira Police Officer David Townsend and New York State Trooper Daniel Buchy (spelled "Bucci" in the complaint) were traveling together in the City of Elmira in a marked State Police vehicle. They were attempting to execute arrest warrants issued by the Chemung County Court as a result of a lengthy undercover narcotics investigation. At approximately 9:30 a.m., the officers received a radio call advising that a woman who was one of the targets of the investigation had been observed walking with plaintiff near Langdon Plaza in Elmira.

Townsend had known plaintiff for several years, primarily through his involvement in previous narcotics investigations. Townsend was aware that plaintiff had a record of prior arrests and convictions for drug offenses, and that at the time he was on parole for a felony drug offense. Townsend also knew plaintiff from pick-up basketball games at the YMCA.

As the officers approached the Langdon Plaza location, Townsend observed plaintiff standing with a woman in front of a "Rent–A–Center" store. Buchy parked the State Police vehicle in the Plaza parking lot, and the officers exited the vehicle and approached the couple. Townsend greeted plaintiff using his nickname, "Dike." He asked the woman if she had any identification. She responded that she did not. Townsend then observed plaintiff "acting very nervous" (Townsend Aff., Item 34, ¶ 18). He placed his right hand in his right-front pants pocket, backed away from the officers, and ran.

Townsend pursued plaintiff across the street and observed him enter an alley. Townsend proceeded around a building to the other end of the alley, where he observed plaintiff emerge from the alley and walk casually toward Officer Buchy. His hand was no longer in his pocket. Officer Buchy directed plaintiff to put his hands on the back of the police vehicle while Buchy frisked him.

At that point, a civilian witness approached and informed the officers that she had seen plaintiff throw an object on the roof of a building adjacent to the alley. Buchy handcuffed plaintiff and placed him in the State Police vehicle. Several minutes later, the Elmira Fire Department arrived with a ladder. Townsend climbed onto the roof of the building and retrieved a plastic bag containing a substance that was later field-tested to be cocaine.

Plaintiff was arrested and charged with criminal possession of a controlled substance in the third degree. He was subsequently indicted by the Chemung County grand jury for criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. On July 28, 1995, Chemung County Court Judge Samuel Castellino issued a decision in which he found that, under New York law, Townsend's pursuit of plaintiff was "ille-

gal" and that the evidence obtained as a result of the pursuit should be suppressed (Item 37, Ex. B). The charges were dropped, and plaintiff was subsequently released from custody in September, 1995.

On February 27, 1997, plaintiff commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Townsend and Buchy "violated [his] fourth amendment right against unreasonable searches" (Item 1, ¶ IV). He seeks an unspecified amount of compensatory and punitive damages. On January 14, 1999, after discovery, defendants moved for summary judgment based on the following grounds:

1. The conduct of defendants Townsend and Buchy did not violate plaintiff's rights under federal constitutional law.

2. Defendants are entitled to qualified immunity.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A fact is "material" only if the fact has some affect on the outcome of the suit. *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. 2505; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. 2505; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As stated by the Second Circuit, a party seeking to defeat a motion for summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . ., that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

### II. 42 U.S.C. § 1983 and the Fourth Amendment.

■ Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. In order to succeed on a claim brought under this statute, a plaintiff must establish that the actions of the defendant deprived the plaintiff of a right guaranteed by the constitution or laws of

the United States, *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Bryant v. Maffucci, supra*, 923 F.2d at 982–83, and that the defendant's action was a proximate cause of the plaintiff's injury. *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir.1999); *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.1998).

 Section 1983 provides a civil claim for damages caused by violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state law. *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Sacco v. Tosto*, 152 F.3d 919, 1998 WL 391410, at *2 (2d Cir.1998). Thus, even where the official conduct at issue may have been found to violate state law, it may not rise to the level of federal constitutional injury cognizable under § 1983. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985); *Fluent v. Salamanca Indian Lease Authority*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994).

In this case, plaintiff seeks damages under § 1983 caused by the official conduct of defendants Townsend and Buchy. Plaintiff claims that he suffered damages as a result of his six-month pretrial detention, which lasted until "Judge Castellino dismissed the charges because [defendants] violated [his] fourth amendment right against unreasonable searches" (Item 1; *see also* Item 32). He also seeks damages for harm to his reputation and revocation of his parole resulting from his March, 1995 arrest (Item 32).

Judge Castellino did indeed dismiss the drug charges brought against plaintiff as a result of the March, 1995 arrest (*see* Item 37, Ex. B). However, a review of Judge Castellino's decision reveals that he relied entirely on New York State law in finding that the officers had no grounds for pursuing plaintiff when he ran from the scene. For instance, Judge Castellino found the case analogous to *People v. Holmes*, 81

N.Y.2d 1056, 601 N.Y.S.2d 459, 619 N.E.2d 396 (1993), in which the New York Court of Appeals upheld the Appellate Division's suppression of crack cocaine seized as a result of improper police procedures. *See also People v. Holmes*, 181 A.D.2d 27, 585 N.Y.S.2d 718 (1st Dep't 1992). In *Holmes*, two New York City police officers were patrolling a known narcotics location in Manhattan when they noticed a group of men standing on a street corner. One of the officers noticed a large bulge in the defendant's jacket pocket and also saw him step away from the group. As the officer called from the police car to the defendant requesting him to come over, the defendant ran away and the officer gave chase. While in pursuit, the officer saw the defendant throw a plastic bag through a chain link fence. The defendant was eventually caught, and the bag was recovered which was later determined to contain crack cocaine.

The trial court denied the defendant's motion to suppress the drugs, but the First Department unanimously reversed. The Court of Appeals upheld the Appellate Division's decision to suppress the evidence, holding that "[w]hile the police may have had an objective credible reason to approach defendant to request information . . . those circumstances, taken together with defendant's flight, could not justify the significantly greater intrusion of police pursuit." *People v. Holmes, supra*, 81 N.Y.2d at 1058, 601 N.Y.S.2d 459, 619 N.E.2d 396 (citing *People v. DeBour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976)).

As recognized by the state courts, this holding "is not identical in scope with the Federal Fourth Amendment." *People v. Holmes, supra*, 181 A.D.2d at 30, 585 N.Y.S.2d at 720. The First Department explained that the United States Supreme Court holding in *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), "forecloses any argument that the police violated [Holmes's] rights under the Fourth Amendment of the Federal

Constitution, and he seeks relief solely under principles of this State's law ..., specifically article I, § 12 [of the New York State Constitution], which ... has been held, in various instances, to provide our citizens with greater protection from governmental intrusion than that afforded by the Federal provision." *Id.*, 181 A.D.2d at 30, 585 N.Y.S.2d at 719–20 (citing *People v. Scott*, 79 N.Y.2d 474, 583 N.Y.S.2d 920, 593 N.E.2d 1328 (1992)).

In *Hodari D.*, two police officers were on routine patrol in a high crime area in Oakland, California. The officers were in civilian clothing and were traveling in an unmarked car, but had jackets bearing the word "Police" on both front and back. As the officers came around a corner, they noticed four or five youths surrounding a car which was parked at the curb. When the youths saw the officers, they fled. One officer remained in the car, while the other gave chase on foot. As the officer caught up to defendant Hodari, he observed Hodari throw a small object that appeared to be a rock. The officer tackled Hodari and handcuffed him. A search of Hodari found $130 and a pager. The rock which Hodari threw to the ground was later tested and determined to be crack cocaine. Hodari was prosecuted in juvenile court, where a motion to suppress was denied. The California Court of Appeals reversed, holding that Hodari had been seized when he saw the officer running towards him, and that this seizure was unreasonable under the Fourth Amendment. *California v. Hodari D., supra*, 499 U.S. at 622–23, 111 S.Ct. 1547.

On *certiorari* review, the Supreme Court held that Hodari had not been seized under the Fourth Amendment when the officer gave chase, and hence the cocaine he discarded while he was running was not the fruit of an unreasonable seizure. The Court reasoned that in order to be seized by a "show of authority," an individual must objectively feel that he is not free to leave. *Id.*, 499 U.S. at 627–28, 111 S.Ct. 1547 (citing *United States v.*

*Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *Immigration and Naturalization Serv. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). The Court stressed that although Hodari may not have felt free to go about his business, the issue was not whether he perceived that he was being ordered to restrict his movement, "but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.*, 499 U.S. at 628, 111 S.Ct. 1547. Thus, the Court concluded that Hodari was not seized until he was tackled, and that the crack cocaine which he threw to the ground was not the result of an unconstitutional seizure.

This holding controls the analysis applicable here. The undisputed facts show that, when first observed by the officers on March 9, 1995, plaintiff was in the company of a known target of a lengthy drug investigation. Officer Townsend had known plaintiff for several years from numerous encounters while working in the Narcotics Unit of the Elmira Police Department. He was aware that plaintiff had prior arrests and convictions for drug-related offenses, and that plaintiff was on parole for a felony drug conviction based on the sale of crack cocaine to an undercover police agent. When Townsend exited the police car and approached, plaintiff placed his hand in his right-front pants pocket and fled. Townsend pursued, but lost sight of plaintiff in an alley. He next saw plaintiff walking casually toward Trooper Buchy, his hand no longer in his pocket. Townsend then immediately received information from a civilian who told him she saw plaintiff throw an object on the roof of a building adjacent to the alley. *See, e.g., United States v. Morgan*, 936 F.2d 1561, 1569 (10th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992) (information communicated by citizen-witness to police officer was reliable, and along with officer's per-

sonal observations and knowledge gave clear support to a finding of probable cause); *Easton v. City of Boulder,* 776 F.2d 1441, 1449–50 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986) (discussing reasons for crediting information provided by citizen-witness informants). When he climbed to the roof of the building, Townsend observed that there was freshly fallen snow which was undisturbed except for a small plastic bag, which had no snow on it. He picked up the bag, which contained a substance later fielded-tested to be cocaine (Item 34, ¶¶ 3–30).

■ Under the holding of the United States Supreme Court in *California v. Hodari D.,* plaintiff was not seized within the meaning of the Fourth Amendment at the time he discarded the drugs. *See, e.g., Salamacha v. Lynch,* 165 F.3d 14 (2d Cir. 1998) (Table, Text available in WESTLAW at 1998 WL 743905) (police chase does not create Fourth Amendment seizure unless and until there is physical seizure of the person); *United States v. Wiggins,* 97 F.3d 1450 (4th Cir.1996) (Table, Text available in WESTLAW at 1996 WL 526891) (no seizure of defendant until apprehension by police after chase, and no seizure of drugs abandoned during chase); *United States v. Turner,* 35 F.3d 569 (7th Cir.1994) (Table, Text available in WESTLAW at 1994 WL 497312) (no seizure of defendant until apprehension by police after chase, and no seizure of gun abandoned during chase); *United States v. Batista,* 1999 WL 33450 (S.D.N.Y. Jan. 27, 1999) (no seizure of bag containing drugs abandoned during flight from police). Therefore, notwithstanding Judge Castellino's finding that Townsend's pursuit of plaintiff was "illegal" under New York State law, plaintiff's March 9, 1995

arrest and consequent incarceration did not result from an unreasonable search or seizure under the Fourth Amendment to the United States Constitution. Accordingly, plaintiff cannot establish an essential element of his § 1983 claim—*i.e.,* that the actions of defendants deprived plaintiff of a right guaranteed by the constitution or laws of the United States.

■ In addition, the Second Circuit recently held that a § 1983 plaintiff claiming a deprivation of the Fourth Amendment right to be free from unreasonable search or seizure may only recover damages "directly related to the invasion of . . . privacy" resulting from the deprivation, such as compensation for physical injury, property damage, or injury to reputation. *Townes v. City of New York, supra,* 176 F.3d. at 138, 148–49. The plaintiff may not recover damages "for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.* According to the Second Circuit, to allow financial compensation for time served in state custody, on top of the benefit already received as a result of the suppression of evidence illegally obtained,[1] "would vastly overdeter police officers and would result in a wealth transfer that 'is peculiar, if not perverse.' " *Id.,* 176 F.3d. at 148.

■ Furthermore, in order to recover compensatory damages for injury to reputation, loss of earnings, or other compensable injury resulting from his incarceration, plaintiff must plead and prove the elements of a common-law malicious prosecution claim. *Id.* at 148–49. The elements of a malicious prosecution claim under New York law are: (1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no

---

1. As in the case of Mr. Townes, *see* 176 F.3d 138, 141, the benefit reaped by plaintiff in this case as a result of the state court's suppression of evidence—*i.e.,* freedom from incarceration—was short-lived. On November 15, 1996, plaintiff was convicted on two counts of criminal sale of a controlled substance in the third degree, as a result of his arrest in No-

vember, 1995. *People v. Driscoll,* 251 A.D.2d 759, 759–60, 675 N.Y.S.2d 151, 153 (3rd Dep't), *appeal denied,* 92 N.Y.2d 949, 681 N.Y.S.2d 479, 704 N.E.2d 232 (1998). He is currently serving consecutive sentences of 7½ to 15 years in a New York State Department of Correctional Services facility.

probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice. *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir.1994); *Collom v. Incorporated Village of Freeport*, 691 F.Supp. 637, 640 (E.D.N.Y.1988). Plaintiff has not alleged conduct on the part of defendants Townsend and Buchy equivalent to malicious prosecution, nor has any evidence been presented on this motion by way of affidavit or exhibit sufficient to create a genuine issue of material fact in this regard.

Accordingly, plaintiff cannot show that he suffered any compensable injury proximately caused by the conduct of defendant Townsend or defendant Buchy. Defendants are therefore entitled to summary judgment on the ground that plaintiff has failed to come forward with enough evidence to support a jury verdict in his favor on his § 1983 claim.

### III. Qualified Immunity.

■ Defendants also move for summary judgment on the ground of qualified immunity. The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under § 1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999). As explained by the Second Circuit in *Thomas v. Roach*, "this policy is justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Thomas v. Roach*, *supra* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Overcoming a defendant's motion for summary judgment based on qualified immunity entails a two-part process. First, the plaintiff must plead and prove the violation of a clearly established federal constitutional or statutory right. Second,

qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right. *Thomas v. Roach*, *supra*, 165 F.3d at 142–43; *see also Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir.1989). As explained by the Second Circuit:

> [A] defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right. In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances. Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.

*Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir.1995) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987); citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Wachtler v. County of Herkimer*, 35 F.3d 77, 80 (2d Cir.1994); *Halperin v. Kissinger*, 807 F.2d 180, 188 (D.C.Cir.1986)).

■ In this case, under the Supreme Court rulings discussed above, plaintiff cannot show that defendants violated a clearly established federal constitutional right. In addition, in light of the totality of the circumstances facing the officers during their encounter with plaintiff on March 9, 1995, the only conclusion a rational jury could reach is that, at best, reasonable officers would disagree about

whether or not defendant Townsend should have pursued plaintiff when he fled from the scene.

Accordingly, defendants are entitled to summary judgment on the ground of qualified immunity.

### CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (**Item 33**) is GRANTED, and plaintiff's cross-motion for summary judgment (**Item 40**) is DENIED.

**SO ORDERED.**