■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEE WOODS, Appellant. [722 NYS2d 55] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Buchter, J.), rendered March 30, 1999, convicting him of criminal possession of marihuana in the fifth degree and criminal possession of a weapon in the third degree, upon separate jury verdicts, and imposing sentence. The appeal brings up for review the denial, after a hearing (Blumenfeld, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

We agree with the hearing court's determination that the police officers who responded to a radio report of a robbery were justified in pursuing the defendant. The defendant's flight and the surrounding circumstances gave the police the requisite reasonable suspicion to justify the pursuit (*see, People v Martinez,* 80 NY2d 444, 448). Unlike the situation in *People v Holmes* (81 NY2d 1056), cited by the dissent, the police here had information that a crime had been committed at the location minutes before their arrival. Although the police initially believed the defendant to be the victim of the crime, his reaction to their inquiries led them to believe that he may have been the perpetrator. Since the pursuit of the defendant was justified, his abandonment of his jacket was not precipitated by any illegal police conduct (*see, People v Martinez, supra,* at 448). Consequently, the hearing court properly denied suppression of the gun and marihuana recovered from the jacket. Altman, J. P., Goldstein and Schmidt, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment, suppress seizure of the gun and marihuana found in the defendant's jacket, and dismiss the indictment, with the following memorandum: On July 2, 1997, at about 9:30 P.M., Police Officer Elderbaum and Sergeant Gladkowski received two radio reports about a gunpoint robbery involving three black men, two of whom had bicycles. According to the first radio report, the victim, a black man "dressed in all white," was waiting for them on the corner of Mott and Central Avenues in Queens County. The second radio report related that a gun was involved in the robbery.

Upon arriving at that location, Officer Elderbaum observed the defendant, a black male, dressed in white and carrying a white jacket. Officer Elderbaum exited the car, approached the defendant, asked him if he was "okay," and in which direction the perpetrators fled, and asked him to enter the police car to help them canvass the area. Instead of answering, the defendant fled down the block. Officer Elderbaum, now thinking that the defendant was a perpetrator, chased him in his car, and saw him throw a jacket to the ground. He blocked the defendant's path with his car, wrestled him to the ground, and handcuffed him. Officer Elderbaum recovered the jacket and felt a heavy object therein which was determined to be a loaded .32 caliber revolver. Upon further search, 20 bags of marihuana were discovered in the defendant's right jacket pocket. The defendant was charged with criminal possession of a weapon in the third degree (two counts) and criminal possession of marihuana in the fifth degree.

The defendant sought to suppress the gun and marihuana, and, after a *Mapp* hearing, the court denied the defendant's motion. He was convicted of criminal possession of marihuana in the fifth degree and criminal possession of a weapon in the third degree. The defendant contends that the hearing court should have suppressed the gun and marihuana because the police did not have reasonable suspicion to chase him and the property was abandoned as a result of their unlawful pursuit. I agree.

The facts in this case are strikingly similar to those in *People v Holmes* (81 NY2d 1056), where two police officers approached a group of men talking near a site where it was known that controlled substances were sold. One officer noticed an unidentified bulge in the right jacket pocket of one of the men. As the patrol car approached, that man left the group and the police called him over. The man ran and threw a plastic bag through a chain link fence. The man was apprehended, and the bag was found to contain 45 vials of crack cocaine. The court declined to suppress the drugs, finding that the police officers' initial right to inquire of that man escalated into a reasonable suspicion that he had committed or was about to commit a crime when he fled from the scene, thereby justifying the pursuit.

In affirming the reversal of the judgment by the Appellate Division, First Department, the Court of Appeals stated (81 NY2d, at 1057-1058):

"Police pursuit of an individual 'significantly impede[s]' the person's freedom of movement and thus must be justified by

reasonable suspicion that a crime has been, is being, or is about to be committed (*People v Martinez,* 80 NY2d 444, 447). Flight, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, could provide the predicate necessary to justify pursuit * * * Flight alone, however, or even in conjunction with equivocal circumstances that might justify a police request for information * * * is insufficient to justify pursuit because an individual has a right 'to be let alone' and refuse to respond to police inquiry (*see, People v May,* 81 NY2d 725, 727-728) * * *

"While the police may have had an objective credible reason to approach defendant to request information—having observed him in a 'known narcotics location' with an unidentified bulge in the pocket of his jacket—those circumstances, taken together with defendant's flight, could not justify the significantly greater intrusion of police pursuit * * *

"If these circumstances could combine with flight to justify pursuit, then in essence the right to inquire would be tantamount to the right to seize, and there would, in fact, be no right 'to be let alone.' That is not, nor should it be, the law."

In the case at bar, although the police had an objective reason to approach the defendant and inquire based on the information received in the radio report, that information, combined with the defendant's flight, did not justify the significantly greater intrusion of police pursuit. Clearly, the testimony of Police Officer Elderbaum revealed that he did not see a "bulge" and acted to chase the defendant based only on the defendant's flight and his belief that he had misapprehended the contents of the radio report. Although he stated that he arrested the defendant for his safety as well as that of his partner, that statement is belied by the fact that he had initially invited the defendant to enter the patrol car to canvass the area. There simply was no reasonable suspicion that the defendant committed or was about to commit a crime (*see, People v Holmes,* 81 NY2d 1056, *supra; People v May,* 81 NY2d 725, *supra*). Inasmuch as the unlawful police pursuit induced the defendant to abandon the jacket which contained the gun and marihuana, that evidence should have been suppressed (*see, People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023).