# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1427**

**KA 12-00337**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, WHALEN, AND MARTOCHE, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                        MEMORANDUM AND ORDER

MICHAEL A. CADY, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, THE WOLFORD LAW FIRM, LLP (JAMES A. HOBBS OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MATTHEW DUNHAM OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Joseph D. Valentino, J.), rendered January 12, 2010. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, those parts of the motion seeking to suppress tangible property and statements are granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon his plea of guilty of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b], [3]) and one count of criminal possession of a weapon in the third degree (§ 265.02 [1]). In appeal No. 2, defendant appeals from a resentence on his conviction.

With respect to appeal No. 1, defendant contends that Supreme Court erred in refusing to suppress the handgun that he discarded while being pursued by the police and his subsequent statements to the police. According to defendant, the police lacked a reasonable suspicion to justify the pursuit. We agree.

At the suppression hearing, the People presented evidence that, at approximately 11:00 p.m. on January 31, 2009, police officers were patrolling the Dayton Street area in the City of Rochester in an attempt to locate an individual who had shot a police officer that afternoon. Numerous officers were involved in the investigation, which involved establishing perimeters and engaging people who might

have information about the shooting or the suspect. Defendant was observed by police walking in the area of Hudson Avenue and Avenue D, which was within a block or two of where the shooting occurred. As the People acknowledge, defendant was not a suspect in the shooting. Two uniformed officers approached defendant and attempted to speak with him, whereupon defendant said, "What, we can't go to the store?" Defendant had been walking toward a store that was open for business at that time. Before the officers were able to answer defendant's question, defendant turned his back on them, made a gesture with his arms toward his waistband, and began running. The police pursued defendant on foot and observed him discard a handgun from his pocket as he was being tackled by a fellow officer.

As an initial matter, we note that defendant does not dispute that the police had an objective credible reason to approach defendant to request information about the shooting, thereby rendering the police encounter lawful at its inception (*see People v De Bour*, 40 NY2d 210, 220). "With respect to the subsequent pursuit, it is well settled that 'the police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime' " (*People v Riddick*, 70 AD3d 1421, 1422, *lv denied* 14 NY3d 844, quoting *People v Martinez*, 80 NY2d 444, 446). Flight alone, however, " 'is insufficient to justify pursuit because an individual has a right "to be let alone" and refuse to respond to police inquiry' " (*id.*, quoting *People v Holmes*, 81 NY2d 1056, 1058). Nevertheless, "defendant's flight in response to an approach by the police, *combined with other specific circumstances indicating that the suspect may be engaged in criminal activity*, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (*People v Sierra*, 83 NY2d 928, 929 [emphasis added]; *see Riddick*, 70 AD3d at 1422). "It is further well settled that actions that are 'at all times innocuous and readily susceptible of an innocent interpretation . . . may not generate a founded suspicion of criminality' " (*Riddick*, 70 AD3d at 1422).

Here, "the fact that defendant reached for his waistband, absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant had committed or was about to commit a crime" (*id.* at 1422-1423; *see Sierra*, 83 NY2d at 930; *cf. People v Bachiller*, 93 AD3d 1196, 1197-1198, *lv dismissed* 19 NY3d 861). Moreover, the fact that defendant was located in the general vicinity of a police shooting, approximately eight hours after the shooting occurred, does not provide the "requisite reasonable suspicion, in the absence of 'other objective indicia of criminality' " that would justify pursuit (*Riddick*, 70 AD3d at 1423), and no such evidence was presented at the suppression hearing. Thus, "although the police had a valid basis for the initial encounter, 'there was nothing that made permissible any greater level of intrusion' " (*id.*, quoting *People v Howard*, 50 NY2d 583, 590, *cert denied* 449 US 1023).

"Inasmuch as the police officers' pursuit of defendant was unlawful, the handgun seized by the police should have been suppressed

. . . , and the statements made by defendant to the police following the unlawful seizure also should have been suppressed as fruit of the poisonous tree" (*id.* at 1424).  In light of our determination that the court erred in refusing to suppress the handgun obtained as a result of the illegal pursuit and his subsequent statements to the police, defendant's guilty plea must be vacated (*see id.*).  Moreover, because our determination results in the suppression of all evidence in support of the crimes charged, the indictment must be dismissed (*see People v Stock*, 57 AD3d 1424, 1425).  We therefore remit the matter to Supreme Court for further proceedings pursuant to CPL 470.45.

Finally, in light of our determination that reversal of the judgment in appeal No. 1 is required, we vacate the resentence in appeal No. 2.

Entered:  February 1, 2013                        Frances E. Cafarell
                                                  Clerk of the Court